UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :
GUDELIA RAMOS,
                                                              :
                                  Plaintiff,                       08 Civ. 4969 (DF)
                                                              :
                    -against-                              **MEMORANDUM**
                                                              :   **AND OPINION**
SEARS/KMART,
                                                              :
                                  Defendant.
------------------------------------------------------------------------X


**DEBRA FREEMAN, United States Magistrate Judge:**

        In this personal injury case, before me on consent pursuant to 28 U.S.C. § 636(c),

plaintiff Gudelia Ramos ("Plaintiff") alleges that she suffered knee injuries when she tripped and

fell after her sneaker got caught in the metal grooves of a step on a stationary escalator.

Defendant Kmart Corporation, sued herein as Sears/Kmart ("Defendant") has filed two motions

that are currently pending before this Court.  As a substantive matter, Defendant has moved for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that

Plaintiff has not established a *prima facie* case of negligence.  Secondarily, pursuant to

Rule 30(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, Defendant has moved

for sanctions against Plaintiff's counsel for purported misconduct at a deposition.  For the

reasons set forth below, Defendant's motion for summary judgment (Dkt. 29) is granted, and the

motion for sanctions (Dkt. 20) is also granted, but only to the extent that Plaintiff's counsel is

directed to pay half of the costs associated with the deposition in question.

## BACKGROUND

A.   **Factual Background**[1]

On the afternoon of December 26, 2007, Plaintiff arrived at a Kmart store located at

1 Penn Plaza, New York, New York.  (*See* Kmart Corporation's Statement of Facts Pursuant to

Rule 56.1, dated Jan. 13, 2010 ("Def. Rule 56.1 Stmt.") (Dkt. 31), ¶ 1; Affirmation of Allison C.

Leibowitz, Esq., dated Jan. 13, 2010 ("Leibowitz Aff.") (Dkt. 30), Ex. F (Transcript of the

Deposition of Gudelia Ramos, conducted Nov. 3, 2009 ("Ramos Dep.")), at 16.[2])  The Kmart

store had three floors, two below ground level, and Plaintiff descended to the lowest floor.[3]  (*See*

Def. Rule 56.1 Stmt., ¶ 3; *see also* B. Fintz Aff., ¶¶ 10, 12.)

In order to shop for children's clothing, Plaintiff then proceeded to the escalator that

connected the lowest floor to the middle floor.  (*See* Def. Rule 56.1 Stmt., ¶ 4; Ramos Dep., at

28-29.)  Before she entered the escalator, she noticed that it was stopped.  (*See* Def. Rule 56.1

Stmt., ¶ 5.)  Although there were elevators nearby, Plaintiff chose to walk up the escalator

---

[1]  The facts as summarized herein are taken primarily from Defendant's statement of material facts, submitted pursuant to Local Civil Rule 56.1, to which Plaintiff has not responded. (*See* Local Civ. R. 56.1(c); *see also* discussion *infra* at Section I(A)(2).)

[2]  There is a dispute between the parties as to whether Plaintiff's corrections to her deposition transcript were proper and timely under Rule 30(e) and (f) of the Federal Rules of Civil Procedure.  (*See* Affirmation of Bernard Fintz, Esq., dated Apr. 22, 2010 ("B. Fintz Aff.") (Dkt. 44), ¶ 9 n.1; Memorandum of Law in Support of Defendant's Reply, dated May 6, 2010 ("Def. Reply") (Dkt. 46), at 3.)  While these proposed corrections were substantial, ultimately none of them would place the material facts of the case into dispute.  It is thus unnecessary for the Court to consider their procedural propriety.

[3]  Defendant argues that any evidence about store levels and escalators obtained by Plaintiff from a post-deposition inspection of the Kmart store (*see* B. Fintz Aff., ¶¶ 8-14; *see also* Affirmation of Alan S. Fintz, Esq., dated Apr. 21, 2010) is inadmissible because that inspection took place without Kmart's knowledge or consent (*see* Def. Reply, at 2).  Because the findings of the inspection would not place any material facts in dispute, the Court also need not consider this argument.

instead, because the elevators were slow and often packed with cartons.  (*See id.*, ¶ 7; Ramos

Dep., at 34, 36.)  She saw a couple of people walking up the escalator in front of her.  (*See* Def.

Rule 56.1 Stmt., ¶ 6.)  After climbing several steps, Plaintiff testified that she tripped and fell on

the third step from the top, having caught her right sneaker on the metal grooves of the step.

(*See id.*, ¶ 8 & n.1; Ramos Dep., at 41, 44-46.)

Plaintiff landed on both knees, causing them to become injured and swollen, and her right

knee was cut.  (*See* Leibowitz Aff., Ex. D (Plaintiff's Answer to First Set of Interrogatories,

dated June 24, 2008), ¶ 4).)  Plaintiff testified that she was down for five or 10 minutes before

being helped up by a man who walked up the escalator behind her.  (*See* Def. Rule 56.1 Stmt.,

¶ 9; Ramos Dep., at 45.)  Plaintiff then spoke to an employee of Kmart, who brought her a chair

to sit on.  (*See* Def. Rule 56.1 Stmt., ¶ 10.)  She asked him to call for an ambulance.  (*See id.*)

Plaintiff estimates that she waited almost two hours for the ambulance, during which time she

had a view of the subject escalator, but observed no one else fall down.  (*See id.*, ¶ 11.)  When

the ambulance arrived, Plaintiff was transported to Roosevelt Hospital.  (*See id.*, ¶ 12.)

The store manager, Charles Moore, testified that, at the time of Plaintiff's accident,

Kmart had contracted with a company called "Kone" for maintenance, repair, and upkeep of the

escalators.  (*See id.*, ¶ 14.)  Kmart employees were not responsible for performing maintenance

on the escalators, and the decision to shut off any escalator in the Kmart store was made by a

representative of Kone.  (*See id.*, ¶¶ 14-15.)

### B.     Procedural History

Plaintiff filed a Summons and Complaint against Kmart Corporation in the Supreme

Court of the State of New York, County of New York, on April 24, 2008, alleging negligence.

3

(Leibowitz Aff., Ex. A ("Compl.").)  On May 29, 2008, Defendant filed a Notice of Removal to remove the case to this Court.  (*See* Dkt. 1.)  This case was referred to me on consent under 28 U.S.C. § 636(c), on October 31, 2008.  (*See* Dkts. 6, 7.)

On November 3, 2009, during the discovery period, Defendant conducted Plaintiff's deposition.  (*See* Ramos Dep.)  At that deposition, Plaintiff was represented by Bernard Fintz, Esq.  (*See id*.)  Defendant contends that, in general, Mr. Fintz's conduct at the deposition was "irrational, unprofessional, rude, disruptive, and harassing" (Memorandum of Law in Support of Defendant's Motion for Costs and Sanctions, dated Nov. 12, 2009 ("Def. Sanctions Mem."), at 8), and that, more specifically, Mr. Fintz attempted to testify for Plaintiff (*see id.* at 2-4), made improper objections (*see id.* at 4-6), and "yelled and pointed" at Defendant's counsel "continuously during the course of the deposition" (*see id.* at 6-7).  Based on this conduct, Defendant filed a motion for sanctions against Mr. Fintz on November 12, 2009.  (*See* Dkts. 20, 21, 22.)

On January 13, 2010, after the close of discovery, Defendant filed a motion for summary judgment, along with supporting documents, including an Attorney's Affirmation, a Statement of Facts submitted pursuant to Local Civil Rule 56.1, and a Memorandum of Law.  (*See* Dkts. 29, 30, 31, 32.)  Plaintiff responded by submitting a counsel affirmation incorporating legal arguments.  (*See* Dkts. 43, 44.)  On May 11, 2010, Defendant filed a Reply Affirmation and a Reply Memorandum in support of its motion for summary judgment.  (*See* Dkts. 45, 46.)

## DISCUSSION

I.    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    A.    **Applicable Legal Standards**

        1.    **Rule 56**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and the Court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party, *Matsushita*, 475 U.S. at 587-88; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). Where, however, the non-movant has no evidentiary support for an essential element on which it bears the burden of proof, summary judgment is warranted. *Celotex*, 477 U.S. at 322-23; *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir. 1991); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

### 2. <u>Local Civil Rule 56.1</u>

Under this Court's rules, a party moving for summary judgment under Rule 56 must submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a). If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Local Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law.  *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73-74 (2d Cir. 2001).  Summary judgment may only be granted where the Court is satisfied that the undisputed facts, as supported by the record, "'show that the [movant] is entitled to a judgment as a matter of law.'"  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

In this case, Defendant properly submitted a Rule 56.1 statement in support of its motion for summary judgment, but Plaintiff did not submit a corresponding numbered statement to contest any material facts.  Therefore, for the purposes of deciding the motion for summary judgment, the Court deems admitted the facts as stated in Defendant's Rule 56.1 statement, to the extent those facts are supported by the underlying record.

B.     **Plaintiff's Negligence Claim**

To establish a *prima facie* case of negligence under New York law,[4] a claimant must show that:  (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as the proximate result on that breach. *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)).  Evidence of a violation of the New York City Building Code may be sufficient to raise a triable of question of fact as to the defendant's negligence.  *See Romanowski v. Yahr*, 773 N.Y.S.2d 922, 922 (4th Dep't 2004).

For the reasons stated below, the Court finds no issues of material fact that could support a finding in favor of Plaintiff on the elements of duty or breach, and Defendant's motion for summary judgment should be granted accordingly.

1.     **Duty To Warn**

If a property owner has a hazardous condition on its premises, then it generally has a duty to warn visitors of the danger.  *See Westbrook v. WR Activities-Cabrera Markets*, 773 N.Y.S.2d 38, 41 (1st Dep't 2004).  If, however, the condition is "open and obvious," then there is no such duty, as there is no benefit to a warning that adds nothing to the visitor's appreciation of the risk. *See id.*; *see also Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 43 (2d Dep't 2003) (finding no duty to warn where a depressed area of a sidewalk was readily observable and plaintiff had traversed the sidewalk many times before).

---

[4] In this diversity action, neither of the parties has specifically addressed the question of which jurisdiction's law governs their dispute.  The parties each appear to assume, however, that the law of New York – the site of Plaintiff's accident – controls, and "such implied consent . . . is sufficient to establish choice of law."  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks and citation omitted).

Here, assuming the stationary escalator could be considered a hazard, Plaintiff was well aware that the escalator was not running, at the time she began to climb the steps.  (*See* Def. Rule 56.1 Stmt., ¶ 5.)  Further, Plaintiff does not contend that the steps were defectively constructed or that there were any hazardous obstructions on the stopped escalator.  She simply alleges that the escalator itself was dangerous because its steps had metal grooves in which her sneaker could get caught.  (*See* Compl., ¶ 6.)  Surface grooves, however, are a feature common to escalators, and their presence is readily apparent.  *See generally Calzaretto v. Trump Casino Hotel*, No. 87-1940, 1989 U.S. Dist. LEXIS 1186, at *7 (E.D. Pa. Feb. 3, 1989) ("Courts have long recognized the fact that escalators are part of common experience and that problems associated with travel thereon are well known.").  The allegedly hazardous condition was thus open and obvious, and Kmart had no duty to warn Plaintiff about a condition that she could easily observe on her own.  *See Schurr v. Port of Authority of New York and New Jersey*, 763 N.Y.S.2d 304, 304-05 (1st Dep't 2003) (concluding that there was no duty to warn about the uneven spacing at the end of a stopped escalator's steps, as the condition was open and obvious to any observer); *Jones v. Washington Metro. Area Transit Authority*, 742 F. Supp. 24, 27 (D.C. Cir. 1990) (finding no duty to warn about "the presence of slots in the escalator treads"); *see also Jones v. Presbyterian Hospital*, 771 N.Y.S.2d 109, 110 (1st Dep't 2004) (finding no obligation to warn plaintiff of the precise number of steps on a stairway); *Fabian v. Sunbury Footaction, Inc.*, 738 N.Y.S.2d 590, 590 (2d Dep't 2002) (granting summary judgment against plaintiff who injured her knee against the corner of a bench on which she had just been sitting, on the ground that plaintiff had "failed to observe an open and obvious condition").

Accordingly, Plaintiff has not presented any triable issue as to whether Defendant breached a "duty to warn."

### 2.   Duty To Maintain a Reasonably Safe Premises

A property owner also owes a duty of providing a reasonably safe premises whenever the general public is invited onto the property. *See Peralta v. Henriquez*, 100 N.Y.2d 139, 143 (2003). Under New York law, "the duty to maintain premises in a reasonably safe condition is analytically distinct from the duty to warn, and . . . liability may be premised on a breach of the duty to maintain reasonably safe conditions even where the obviousness of the risk negates any duty to warn." *Cohen v. Shopwell, Inc.,* 765 N.Y.S.2d 40, 42 (1st Dep't 2003); *accord Westbrook*, 773 N.Y.S.2d at 42 (quoting *Cohen*). This is because "[a] contrary rule of law would permit a landowner to persistently ignore an extremely hazardous condition – regardless of how foreseeable it might be that injuries will result from such condition – simply by virtue of the fact that it is obvious and apparent to onlookers." *MacDonald v. City of Schenectady,* 761 N.Y.S.2d 752, 755 (3d Dep't 2003). The law dictates that an owner must maintain its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the potential seriousness of any such injuries, and the burden of avoiding the risk. *See Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). It is for the Court to determine what duty, if any, exists, and "[t]he scope of any such duty of care varies with the foreseeability of the possible harm." *Tagle v. Jakob*, 97 N.Y.2d 165, 168 (2001).

In this case, Defendant argues that it did not breach a duty to maintain a safe premises for two reasons: first, because it was not responsible for maintaining or repairing the escalators in the store (*see* Memorandum of Law in Support of Defendant's Motion for Summary Judgment,

9

dated Jan. 13, 2010 ("Def. Mem.") (Dkt. 32), at 6), and second, because the stationary escalator cannot actually be said to have constituted a dangerous condition (*id.*, at 8-14).  Although the first of these arguments lacks merit, the second is persuasive.

As to Kmart's responsibility for the safety of the escalator, the unrefuted evidence shows, as noted above, that, at the time of Plaintiff's accident, Kmart contracted with a third party (Kone) to handle maintenance duties, and only a representative of Kone could make the decision to close off an escalator.  (*See id.* at 6-7.)  Contrary to Defendant's contentions, however, this arrangement did not relieve Kmart of all responsibility for injuries occurring on its escalators. As the owner of the premises, Kmart had a non-delegable duty to maintain its escalators in a reasonably safe condition.  *See Fuchs v. Elo Group, Inc.*, 747 N.Y.S.2d 181, 182 (2d Dep't 2002); *see also Camaj v. East 52nd Partners*, 626 N.Y.S.2d 110, 111 (1st Dep't 1995); *O'Neill v. Mildac Properties*, 556 N.Y.S.2d 387, 389 (2d Dep't 1990).

As for whether the stationary escalator in question could have constituted a hazard, however, New York precedent that is squarely on point compels the conclusion that, in the absence of any defect, debris or other obstruction, the escalator, even if not running, cannot be found to have been a dangerous condition that posed a foreseeable risk of injury.  *See Adamo v. National R.R. Passenger Corp.*, 897 N.Y.S.2d 85, 86-87 (1st Dep't 2010) (holding that a plaintiff who tripped and fell while ascending the steps of a stationary escalator could not recover because the escalator did not present a reasonably foreseeable hazard in the absence of any allegation that it was defectively repaired or covered with debris).  Analogous cases, regarding similar types of conditions, are to the same effect.  *See, e.g., Burke v. Canyon Rd. Rest.*, 876 N.Y.S.2d 25, 26 (1st Dep't 2009) (upholding summary judgment against a plaintiff who slipped

and fell on steps, given that, in the absence of evidence of water, debris, other hazards, or previous complaints or accidents, the court could not conclude that the subject step was "inherently dangerous"); *Salerno v. Street Retail, Inc.*, 831 N.Y.S.2d 265, 266 (2d Dep't 2007) (upholding summary judgment against plaintiff who slipped on a staircase based on conclusion that stairs present an open and obvious condition that is not inherently dangerous); *Gaines v. Shell-Mar Foods, Inc.*, 801 N.Y.S.2d 376, 377 (2d Dep't 2005) (upholding summary judgment against plaintiff who tripped and fell over a cement parking lot divider because the divider was readily observable and not inherently dangerous).  Thus, under New York law, the mere fact that an escalator is not running does not create a triable issue of fact as to whether a defendant has breached its duty to maintain a reasonably safe premises.[5]

In support of her argument that the question of whether a stopped escalator is a defective condition is for the jury to evaluate (*see* B. Fintz Aff., ¶¶ 23, 31), Plaintiff cites only a dissenting opinion in a New York case (*see id.,* ¶¶ 36-37, citing the dissent in *Schurr*, 763 N.Y.S.2d at 305-06), which is contrary to the controlling state law, and a decision from the Sixth Circuit (*see id.,* ¶ 37 (citing *Kilgore v. Carson Pirie Holdings, Inc.*, No. 05-6035, 205 Fed. Appx. 367 (6th Cir. Nov. 8, 2006)), which was decided under Tennessee law.  Moreover, both of these opinions focus on the uneven spacing of a stopped escalator's risers as a potential hazard that may cause someone to lose his or her footing and fall.  *See Kilgore*, 205 Fed. Appx. at 375;

---

[5] Defendant also argues that it was not responsible for Plaintiff's decision to climb the allegedly defective escalator when she could have taken a nearby elevator, as an alternative. (*See* Def. Mem., at 15-16.)  Plaintiff counters that the elevator was not an option because it was used for transporting boxes and merchandise.  (*See* B. Fintz Aff., ¶¶ 20-21.)  Without resolving this disputed issue, the Court notes that, because the escalator did not pose a reasonably foreseeable hazard, it is immaterial whether an alternative choice of route was available.

*Schurr*, 763 N.Y.S.2d at 305-06 (Ellerin, J., dissenting).  In her Complaint in this case, Plaintiff

does not attribute her injury to a variance in step height; rather, she alleges that the metal

grooves of a step caught her sneaker and caused her to trip.  (Leibowitz Aff., Ex. A (Complaint),

¶¶ 4-6).)  In any event, even if Plaintiff had complained about the uneven spacing of the

escalator steps, New York law is clear that this would be considered (a) an "open and obvious"

condition, that (b) did not present a reasonably foreseeable hazard.  *See Adamo*, 897 N.Y.S.2d at

87; *Schurr*, 763 N.Y.S.2d at 305.

### 3.    Alleged Building Code Violations

Plaintiff also argues that the stationary escalator on which she fell failed to conform to

relevant building code requirements.  Specifically, Plaintiff posits that a stationary escalator is

the functional equivalent of a staircase, and that its safety should therefore be evaluated against

the municipal standards set forth for staircases in the New York City Building Code.  (*See*

B. Fintz Aff., § C, ¶¶ 21-31.)  Plaintiff argues that the Defendant's stationary escalator violated

three separate provisions of N.Y.C. Admin. Code § 27-375, which govern "interior stairs":  all

such interior stairs must have, according to Plaintiff, a minimum width of 44 inches, a maximum

vertical rise of 12 feet between landings, and a constant step height.  (*See id.*, ¶¶ 25, 26, 28, 30.)

Although building code violations may constitute evidence of negligence in some

situations, the alleged violations cited by Plaintiff do not give rise to a triable issue of fact

sufficient to defeat summary judgment.[6]  Simply put, there is no building code violation here

---

[6] Furthermore, these purported violations would be insufficient to give rise to a claim of negligence *per se*.  Although violations of state statutes may provide the basis for *per se* negligence claims under New York law, the New York State Court of Appeals has held that such a claim may not be based solely on New York City Building Code violations.  *Elliott v. City of New York*, 95 N.Y.2d 730, 735-36 (2001).  To the extent this Court reasoned to the contrary in

because the New York City Building Code provisions cited by Plaintiff do not apply to stationary escalators.  The provisions cited by Plaintiff govern "interior stairs," which are "stair[s] within a building, that serve[] as a required exit."  N.Y.C. Admin. Code § 27-232. Escalators are designed and installed under a different set of building code requirements.  *See id.*, § 27-378 (pertaining specifically to escalators).  Furthermore, even if a stationary escalator could be considered the equivalent of "stairs" for Building Code purposes, the escalator in question did not serve as a "required exit" and therefore would not qualify as "interior" stairs pursuant to Section 27-375.  *See id.*, § 27-232; *see also Schwartz v. Hersh*, 856 N.Y.S.2d 640, 641 (2d Dep't 2008); *Dooley v. Vornado Realty Trust*, 835 N.Y.S.2d 237, 237-38 (2d Dep't 2007); *Weiss v. City of New York*, 792 N.Y.S.2d 530, 533 (2d Dep't 2005).  Building code provisions wholly unrelated to the pertinent Kmart escalator are insufficient to create a triable issue of fact as to Defendant's negligence.

For all of the above reasons, Defendant's motion for summary judgment dismissing Plaintiff's Complaint is granted.

## II.   DEFENDANT'S MOTION FOR SANCTIONS

Under Federal Rule of Civil Procedure 30(d)(2), the Court "may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of [a] deponent."  In addition, an attorney who "unreasonably and vexatiously" prolongs or "multiplies" proceedings may be

---

*Manning v. Tracy J's, Inc.,* No. 06 Civ. 956 (DF), 2008 U.S. Dist. LEXIS 31914, at *19-20 (S.D.N.Y. Apr. 17, 2008), the Court concludes that its analysis in *Manning* was inconsistent with *Elliott*, and that *Elliott* provides the controlling law on this point.

required to pay, personally, the excess costs and fees resulting from his improper conduct. 28 U.S.C. § 1927.

The transcript of Plaintiff's deposition is replete with examples of inappropriate conduct by Plaintiff's counsel, Bernard Fintz.  Apart from making improper speaking objections, counsel plainly engaged in conduct that was uncivil and unprofessional, including repeatedly yelling at both Defendant's counsel and an interpreter – conduct that Plaintiff's counsel does not deny. (*See, e.g.,* Ramos Dep., at 64 ("If I stop yelling, will you stop now?"); *id.* at 73 ("My yelling should not disturb you.  My righteousness is the thing that counts.  I yell because of my righteousness.").)  According to Defendant's counsel, this behavior not only disrupted the deposition, but was so extreme that it prompted the interpreter to leave and also disrupted a proceeding in an adjoining room.  (*See* Def. Sanctions Mem. at 3 (citing Ramos Dep., at 36-37).)[7]

Under the circumstances, a sanction is warranted, although the Court, in its discretion, declines to impose a severe sanction, especially given the dismissal of Plaintiff's Complaint on the merits.  Based on the disruption that he caused to Plaintiff's deposition, Mr. Fintz is directed to pay to Defendant half of all reasonable expenses incurred by Defendant in the taking of that deposition, including the cost of the court reporter, interpreters, and transcript.  As the Court believes that this sanction is a fair one and will be sufficient to penalize Plaintiff's counsel for his conduct, the Court declines to award Defendant any attorneys' fees associated with the

---

[7] The deposition transcript supports the assertions of Defendant's counsel that the interpreter left the deposition as a result of Mr. Fintz's conduct.  (*See* Ramos Dep., at 37 (quoting the interpreter as saying, "I have never ever been in a deposition this freaking rude.  You are rude and obnoxious.  I'm done.").)  After leaving the deposition, the interpreter apparently exited the building, delaying the proceeding until another interpreter arrived.  (*See id.*)

deposition or its full costs, even though such sanctions would be available to the Court. *See* Fed. R. Civ. P. 30(d)(2).

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. 29) is granted in its entirety, and Plaintiff's Complaint is dismissed with prejudice. In addition, Defendant's motion for sanctions against Bernard Fintz, Esq. (Dkt. 20), is granted to the extent that Mr. Fintz is directed to pay to Defendant half of all reasonable expenses incurred by Defendant in the taking of Plaintiff's deposition.

As Defendant's summary judgment motion is granted, the Clerk of the Court is respectfully directed to close this case on the Court's docket.

Dated: New York, New York
       September 13, 2010

                                        SO ORDERED

                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

all counsel (via ECF)

15